USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JANITA HILL                                          :
                                                     :
                                       Plaintiff,    :
          -against-                                  :     1:19-cv-5096 (ALC)
                                                     :
                                                     :     OPINION AND ORDER
                                                     :
                                                     :
COMMISSIONER OF SOCIAL SECURITY,                     :
                                    Defendants.      :
                                                     :
                                                     :
                                                     :
                                                     :

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Janita Hill appeals from the decision of the Commissioner of Social Security that she was not entitled to Title XVI Supplemental Security Income ("SSI") under the Social Security Act. She seeks review of the Administrative Law Judge's ("ALJ") decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Hill moved and the Commissioner cross-moved for judgment on the pleadings. (ECF Nos. 13, 15). For the reasons that follow, Hill's motion is GRANTED and the Commissioner's motion is DENIED.

## BACKGROUND

**I. Procedural Background**

      Plaintiff filed an application for Supplemental Security Income ("SSI") on July 15, 2014. (R 124, 140). Her application was denied, and she requested a hearing. (R 140, 167–69). ALJ Sheena Barr held a video hearing on November 29, 2016 and ultimately issued a decision unfavorable to Plaintiff. (*Id.*10). Plaintiff appealed and the Appeals Council remanded the claim

for a new hearing, instructing that the ALJ give further consideration to Plaintiff's "maximum residual functional capacity" and provide appropriate rationale with specific references to the evidence in support of the assessed limitations. (*Id.*10, 156–59).

ALJ Zachary Weiss held a hearing on March 29, 2018 and ultimately denied Plaintiff's claim in a June 22, 2018 decision. (*Id.* 10–36). The Appeals Council denied Plaintiff's request for review. (*Id.* 1–6). Plaintiff commenced this action on May 31, 2019, asking the court to review ALJ Weiss's decision. (ECF No. 1).

## II. Factual Background

### A. Plaintiff's Background

At the time she filed her SSI application, Ms. Hill was 52 years old and living in the Bronx. (*Id.*124). She resides in supportive housing with a roommate who does the cooking and shopping. (*Id.*49–50). A social worker checks in once a month. (*Id.* 52). Hill's employment history is not clear from the record, but roughly twelve years ago, she worked as a payroll clerk, (Id. 480), and then she worked in another off-books position from 2005 to 2009. (*Id.* 96). She has a high school diploma. (*Id.*432).

Hill has diabetes and suffers from depression and anxiety, among other conditions. Because of her psychological struggles, Ms. Hill struggles to get up in the morning, not "want[ing] to be bothered with anybody and does not socialize with friends outside of her roommate. (*Id.* 49). She has difficulty sleeping and experiences excessive worry as well as auditory hallucinations. (Id. 481). Hill sees a therapist once a week for treatment. She has been diagnosed with Major Depressive Disorder, Recurrent, Moderate, (*Id.* 553–63, 625, 629), Anxiety Disorder, Opioid Use Disorder (*Id.* 848–51), and Bipolar Disorder.

Hill struggled with substance abuse for a number of years but had been attending a treatment program three times a week regularly and takes 20 mg of methadone to manage her addiction. (*Id.* 56–57). She stopped using in 2009 after completing the Narcofreedom program.

Diabetes also causes Hill back and leg pain as well as tingling in her right hand and feet. (*Id.* 53). Hill reports being able to walk no more than two blocks. (*Id.* 53, 55).

**B. Medical Evidence and Opinions in the Record Related to Hill's Physical Impairment**

On August 27, 2104, Hill received an internal medicine consultative examination from Dr. Sharon Revan. (*Id.* 485–89). Dr. Revan noted that Hill has polyuria and polydipsia, and her fingers have consistent tingling and numbness. Dr. Revan noted that Hill limped on the right, but found her to be in no acute distress, to have a normal stance, and to be able to squat fully and walk on her heels and toes without difficulty. Additionally, Hill had full range of motion in her lower extremities, with no strength, reflex, or sensory deficits. (*Id.* 487).

Dr. Revan also wrote about Hill's daily activities, noting that "she showers and dresses herself…cooks, cleans, does laundry, shops, watches TV, listens to the radio, reads…[and] goes out." (*Id.* 486). She concluded her report by opining that Hill has "no limitation with her speech, vision, or hearing…; [n]o limitation with the upper extremities for fine and gross motor activity…no limitation with standing;…[m]ild limitation with walking, laying down and climbing stairs due to back pain;…[and] [n]o limitation for personal grooming or for activities of daily living." (*Id.* 488).

In 2014, 2015, 2016, and 2017, Hill had several appointments with Nurse Practitioner Patricia Girurleo at BrightPoint Health. The physical examinations conducted at these appointments were unremarkable. (*Id.* 490–91, 494, 505, 514–15, 518–19, 812–13, 815–20, 826,

829–34, 839). In October 2015, Hill was diagnosed with Type 2 diabetes. She received ongoing care at BrightPoint for diabetes and hypertension.

Nurse Practitioner Girurleo also submitted two Medical Source Statements. In her more recent statement, she opined that Hill could sit continuously in a working position for over three hours a day and for more than four hours collectively in an eight-hour workday. (*Id.* 797–98). She further opined that Hill could stand or walk continuously for less than fifteen minutes a day and could stand or walk a total of less than one hour a day. (*Id.* 797–98). She also indicated that Hill could never lift over ten pounds and could only occasionally lift over five pounds. (*Id.* 799).

Dr. Lorber, a board-certified orthopedic surgeon, testified as a medical expert based on his review of the record. (*Id.* 77). Dr. Lorber opined that Hill "does not meet or equal any listing and has the ability to perform a medium level of work activity without restrictions." (*Id.* 82). Dr. Lorber also provided his opinion on Nurse Practitioner Giurieo's Statement. He opined that the restrictions she placed on Hill's ability to work were "much too severe and not supported by the evidence in the record." (*Id.* 83).

**C. Medical Evidence and Opinions in the Record Related to Hill's Mental Impairment**

**1. Treating Medical Professionals**

In 2014, Hill began attending therapy sessions at the New York Psychotherapy and Counseling Center ("NYPCC"). (*Id.* 448). At the time, she reported taking medication for depression. She also described difficulty sleeping, lack of appetite, feeling overwhelmed, anhedonia, lack of motivation, mood fluctuations, auditory hallucinations, and feelings of loneliness and depression among other symptoms. (*Id.* 452). She stated she had diabetes and hypertension. Hill indicated that these symptoms severely interfered with her emotional well-being, social relationships, and daily routine. (*Id.* 453). NYPCC's 2014 observational evaluation

4

noted that Hill was overweight, had a "careless" physical appearance, was reserved and scared and struggled to express herself. (*Id.* 461). The report also noted that Hill was sullen, but displayed adequate judgment, insight and impulse control during interviews. (*Id.* 466). Hill was instructed to continue taking Seroquel and Celexa. (*Id.* 475).

NYPCC records from 2015 indicate that Hill reported blaming and criticizing herself and feeling overwhelmed. She struggled to sleep, lacked motivation, was easily frustrated, experienced anxiety, chronic depression, loneliness and auditory hallucinations. (*Id.* 545). In 2015 at NYPCC, Hill saw psychiatrist James Herivaux for medication management. In treatment notes from September 2015, Dr. Herivaux wrote that "[o]ver the past year [Hill] has been mostly stable" and compliant with treatment, despite her continuing depression and sleeping difficulties. (*Id.* 564). He continued her on 20 mg of Celexa, 300 mg of Seroquel, and 10 mg of Ambien. (*Id.* 567). In treatment notes from 2016 through 2018, Dr. Herivaux concluded that Hill remained appropriate for outpatient treatment and that all her symptoms were "adequately controlled by meds." (*Id.* 591, 616, 625, 629, 867, 872, 748, 742, 735). In later sessions, Dr. Herivaux documented that Hill spent time with her family in New Jersey, had social contact with friends at her methadone treatment clinic, and had conflicts with her roommates (*Id.* 719, 866, 870, 863, 865).

Other NYPCC medical professionals confirmed that Hill's symptoms were "adequately controlled by meds" in their treatment notes from 2016, 2017, 2018. (*Id.* 603, 609, 646, 686, 761, 768). These later treatment notes also indicate that Hill "reported feeling stable," did not feel socially isolated, and did feel as though her medication was helping. (*Id.* 737, 740).

Dr. Herivaux also submitted a Medical Source Statement regarding what Hill can do despite her impairments. (*Id.* 568–72). The statement provides that Hill was diagnosed with Major

5

Depressive Disorder, Recurrent, Moderate, had a Global Assessment Functioning score of 50, and suffered from poor memory, sleep and mood disturbances, anhedonia, psychomotor agitations, feelings of guilt and worthlessness, difficulty thinking or concentrating, decreased energy, intrusive recollection of a traumatic experience, and hostility or irritability. Dr. Herivaux opined that Hill had moderate losses in her abilities (i) to remember locations and procedures; (ii) understand, remember, and carry out very short, simple instructions; (iii) sustain an ordinary routine without special supervision; (iv) deal with stress of semi-skilled and skilled work; (v) make simple work-related decisions; (vi) interact appropriately and maintain socially appropriate behavior with the public; (vii) adhere to basic standards of neatness and cleanliness; (viii) get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes; (ix) accept instructions and respond appropriately to criticism from supervisors; (x) ask simple questions or request assistance; (xi) take appropriate precautions from normal hazards; (xii) and use public transportation. (*Id.* 570–71). Dr. Herivaux also documented marked losses in Hill's abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; make simple work-related decisions; respond appropriately to changes in a routine work setting; travel in unfamiliar places; and set realistic goals or make plans independently of others.

(Id.) Overall, Dr. Herivaux concluded that Hill had moderate limitations in activities of daily living, moderate limitations in maintaining social functioning, suffered frequent deficiencies of concentration and continual episodes of deterioration or decompensation. (*Id.* at 571–72). These impairments, Dr. Herivaux estimated, would require her to be absent about three times a month from any job. (*Id.* 569).

6

From the NYPCC medical records, it appears that Hill's most current psychiatrist is Dr. Antonio Sanchez, who also submitted a Medical Source Statement. Dr. Sanchez opined that Hill suffered slight limitations in performing activities of daily living, marked difficulties maintaining social functioning, frequent deficiencies of concentration, and repeated episodes of deterioration or decompensation in work or work-like settings. (*Id.* 805). He also concluded that Hill would need to be absent more than three times a month from any job due to her limitations. (*Id.* 803).

### 2. Consultative Examination

Dr. Fredelyn Engelberg-Damari conducted a consultative examination of Hill on August 27, 2014. (AR 480–84). Hill reported depression, difficulty sleeping, loss of appetite, excessive worry, loss of usual interests, fatigue, diminished self-esteem, auditory hallucinations, and loss of concentration. (*Id.* 481). Hill reported having very few friends, but Dr. Engelberg-Damari wrote that Hill sees her son and father in Newark occasionally and likes to do crosswords, watch TV, read books, and go to the park. She describes Hill as "able to dress, shower, and groom herself" and "able to shop" and "manage money." (*Id.* 483).

Dr. Engelberg-Damari described Hill as well-groomed, responsive and cooperative with adequate social skills and overall presentation. (*Id.* at 481–82). She also noted that Hill displayed below average cognitive functioning but was able to pay attention and concentrate and demonstrate "coherent and goal directed" thoughts "with no evidence of hallucinations, delusions, or paranoia." (*Id.* 482).

Dr. Engelberg-Damari diagnosed Hill with Bipolar Disorder and opined that Hill "is able to perform simple tasks independently," but "would be moderately impaired in her ability to perform complex tasks independently." (*Id.*) She further opined that Hill "is mildly impaired in

7

her ability to relate adequately with others…[and] significantly impaired in her ability to appropriately deal with stress." (*Id.*)

### 3. Medical Expert

Dr. Jonas is a psychiatrist who testified at the 2018 hearing as a medical expert based on his review of the record. (*Id.* 87). Dr. Jonas took issue with Dr. Engelberg-Damari's documentation. He expressed confusion at how she reached a Bipolar Disorder diagnosis while also concluding that Hill's mental state examination was normal. He reasoned that Dr. Engelberg-Damari must have made the diagnosis based on Hill's reporting. (*Id.* 98). Dr. Jonas also testified about NYPCC's medical records and Dr. Sanchez's Statements. He testified that these doctors noted impairments despite normal mental state examinations, and reasoned that they, too, must have relied heavily on Hill's reporting for their psychiatric conclusions. (*Id.* 99).

Dr. Jonas also testified regarding Hill's medication. He testified that as of 2017, Hill was taking 40 milligrams of Celexa a day, up from 20 milligrams a day, which Dr. Jonas opined is a low dose as the maximum accepted dose is 80 milligrams. (*Id.* 102). From this prescription history, Dr. Jonas extrapolated that Hill's prescribing doctors must have concluded that her depression and/or anxiety was addressed adequately by a 40-milligram dose. (*Id.*103). This conclusion, however, Dr. Jonas testified, is inconsistent with Dr. Sanchez's Statement, which indicates that Hill is functionally impaired. (*Id.*103).

Dr. Jonas additionally testified about Dr. Damari's Bipolar Disorder diagnosis. He testified that "[t]he diagnosis is applied rampantly" and is "wrong almost all the time." (*Id.*105).

Dr. Jonas also expressed skepticism about Hill's reliability, noting inconsistencies in what she reported to her doctors and testified to at the hearing. (*Id.* 18–19). Her inconsistencies, Dr.

Jonas opined, undermined confidence in her doctors' opinions, which Dr. Jonas concluded, were based on Hill's reports.

## LEGAL STANDARDS

### I. Judgment on the Pleadings

"A Rule 12(c) motion will be granted 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Corporan v. Comm'r of Social Security*, 2015 WL 321832, at *1 (S.D.N.Y. Jan. 23, 2015) (quoting *Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, 32 F.Supp.3d 436, 440 (S.D.N.Y. May 12, 2014) (internal quotation marks omitted).

### II. Judicial Review of the Commissioner's Decision

District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and "may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record." *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014). "The Second Circuit has defined substantial evidence as 'more than a mere scintilla, and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Grant v. Colvin*, No. 14-CV-7761, 2016 WL 1092685, at *3 (S.D.N.Y. Mar. 21, 2016) (quoting *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015) (citation and internal quotation marks omitted).

"The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. SSA*, 683

F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). "In other words, this Court must afford the Commissioner's determination considerable deference, and may not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Briody v. Commissioner of Social Security*, No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (alteration in original) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted)).

**III. Framework for Disability Claims**

"A disability, as defined by the Social Security Act, is one that renders a person unable to 'engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Ortiz,* 2020 WL 1150213, at *5 (quoting 42 U.S.C. § 423(d)(1)(A)) *accord* 42 U.S.C. § 1382c(a)(3)(A)). "The impairment must be demonstrated by 'medically acceptable clinical and laboratory diagnostic techniques,'" *Gonzalez v. Astrue*, No. 08-CV-3595, 2012 WL 555305, at *8 (S.D.N.Y. Feb. 21, 2012) (quoting 42 U.S.C. § 423(d)(3)), and the claimant must be "unable to do [her] previous work" unable, given "[her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy." *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2(A)).

> The Commissioner must consider both objective and subjective factors when assessing a disability claim, including: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant and family or others testify; and (4) the claimant's educational background, age and work experience.

*Gonzalez*, 2012 WL 555305, at *8.

To determine whether a claimant has a disability withing the meaning of the Social Security Act, the Commissioner engages in a five-step process. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111 (2d Cir. 2010) (quoting *Rosa v. Callahan*, 168 F. 3d 72, 77 (2d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1520(a)(4).

> [1] [T]he Commissioner considers whether the claimant is presently working in substantial gainful activity. [2] If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. [3] If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. If the claimant has such an impairment, there will be a finding of disability. [4] If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's [RFC] allows the claimant to perform his or her past work .[5] Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed infra, that the claimant could perform, taking into account, inter alia, the claimant's [RFC], age, education, and work experience.

*Cole*, 2014 WL 1224568, at * 2 (quoting *Kane v. Astrue*, 942 F.Supp.2d 301, 305–06 (E.D.N.Y. 2013) (internal quotation marks and citations omitted)).

Although the claimant "bears the burden of proving his or her case at steps one through four," *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted), "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560); *see Ortiz, 2020* WL 1150213, at *6.

## DECISION OF THE ALJ

The ALJ followed the five-step process outlined above. First, the ALJ determined that Hill had not engaged in substantial gainful work since the date of her application for SSI. (*Id.* 13).

Second, the ALJ determined that Hill had several severe medical impairments, including diabetes, hypertension, high cholesterol, obesity, major depressive disorder, anxiety disorder, and a history of substance abuse. (*Id.*) Hill's back pain, leg pain, and bipolar disorder, the ALJ determined, were not "medically determinable impairments." (*Id.*)

At Step Three, the ALJ found that Hill had no impairment or combination of impairments listed in or equal to those listed in Appendix 1 of the relevant regulations. (*Id.* 14); *see* 20 CFR Part 404, Subpart P, Appendix 1. F. Specifically, the ALK determined that Hill did not meet the listings for musculoskeletal disorders, neurological disorders, or mental disorders. (R. 14–16).

Because the ALJ determined that Hill's impairments were not of a severity to meet or medically equal the criteria of a listing, he proceeded to step four. He determined that Hill has "the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), except that she was limited to routine, simple, and repetitive tasks—a low stress job defined by occasional decision-making, occasional contact with coworkers, and no changes in the work setting. (R. 16). In reaching this conclusion, the ALJ determined that Hill's impairments could be expected reasonably to cause her alleged symptoms, but that her statements regarding the intensity, persistence of, and limiting effects of her symptoms are inconsistent with medical and other evidence in the administrative record. (*Id.* 17).

To come to the RFC determination, the ALJ considered all medical treatment evidence and opinions.

He assigned moderate weight to Dr. Engelberg-Damari's opinion that Hill is unable to maintain a regular schedule, is moderately impaired in her ability to perform complex tasks independently, and significantly impaired in her ability to appropriately deal with stress, reasoning that it was inconsistent with Dr. Engelberg-Damari's psychiatric treatment notes and

12

Hill's own reported activities of daily living. (*Id.* 25). Regarding Dr. Engelberg-Damari's opinion that Hill is mildly impaired in her ability to relate to others adequately, the ALJ explained that that these mild limitations did not preclude employment. (*Id.*)

The ALJ gave great weight to Dr. Revan's opinion that Hill had no limitations with her upper extremities for fine and gross motor activity and no limitations standing or with personal grooming or activities for daily living. (*Id.*) The ALJ determined this opinion to be consistent with the medical evidence in the record documenting Hill's daily activities and showing generally unremarkable physical examinations. (*Id.*) However, the ALJ gave little weight to Dr. Revan's opinion that Hill has mild limitations walking, lying down, or climbing stairs due to back pain, finding this conclusion inconsistent with Dr. Revan's own findings and other medical evidence in the record. (*Id.*)

Some weight was assigned to Dr. Bruni's opinion, which stated, according to the decision that Hill "has no restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation." (*Id.* 26). The court notes here that Dr. Bruni's opinion does not appear to be included in the Record or addressed by the parties' briefing.

The ALJ assigned "little weight" to all of Nurse Practitioner Giurieo's opinions. (*Id.*) The ALJ justified the relatively little weight he assigned to these opinions based on the fact that Giurieo "is not an acceptable medical source and her opinion is inconsistent with the opinion of Dr. Lorber…a specialist in orthopedic conditions." (*Id.*) Additionally, the ALJ found Giurieo's opinion to be inconsistent with other medical records showing normal musculoskeletal examinations with full range of motion. The ALJ also noted that he had invited Giurieo to elaborate on her conclusory opinions, but received no response. (*Id.*)

Little weight was afforded to Dr. Herivaux's opinion regarding Hill's moderate and marked limitations that would require about three days a month of absence a month from any job. These opinions too, the ALJ reasoned, were inconsistent with a record showing normal mental status examinations as well as Hill's reported daily activities. (*Id.* 27). Dr. Herivaux did not respond to a letter requesting clarification on his position.

Dr. Sanchez's opinions were also afforded little weight, as the ALJ reasoned that Dr. Sanchez's opinion was inconsistent with the overall record documenting that Hill's symptoms were well-controlled by her medications, she had improved in social functioning, and her feelings of depression had diminished. (*Id.*) Dr. Sanchez also did not respond to a follow-up letter.

The ALJ assigned Dr. Lorber's opinion significant weight, as it was consistent with the evidence in the record and Dr. Lorber is a specialist. (*Id.* 18). Dr. Jonas's opinion also was afforded significant weight due to his background as a specialist in psychiatric conditions and support for his opinions in the record. (*Id.* 19).

At the fifth step, the ALJ determined that Hill had no past relevant work experience. At step six, the ALJ concluded that jobs exist in significant numbers in the national economy that Hill can perform. (*Id.* 29). In reaching this conclusion, the ALJ considered the testimony of a vocational expert.

Accordingly, the ALJ found Hill to be not disabled.

## DISCUSSION

Hill's challenges to the ALJ's decision center around Step four, specifically the ALJ's finding with respect to her mental residual functional capacity. Hill argues first, that the ALJ erred in not applying the "treating physician rule" and affording her treating psychiatrists'

assessments more weight. Relatedly, Hill argues that the ALJ failed to consider adequately her treating psychiatrists' opinion that she would need to be absent three times a month from any a job, which, as the vocational expert testified, would be a bar to permanent employment.

The Commissioner argues it is entitled to judgment on the pleadings because substantial evidence supports the Commissioner's decision that Hill is not disabled, the ALJ properly determined Hill's mental residual functional capacity based on the medical evidence in the record, and substantial evidence in the record supported the ALJ finding that jobs Hill can perform exist in the national economy. (ECF No. 16).

Because I conclude that the ALJ failed to apply the "treating physician rule" resulting in a non-harmless error, this case must be remanded for further consideration.

"Under the 'treating physician rule,' a treating physician's opinion will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in ... [the] record.'" *Finch v. Berryhill*, No. 17-CV-892, 2019 WL 1434621, at *11 (S.D.N.Y. Apr. 1, 2019) (quoting 20 C.F.R. § 404.1527(c)(2); see 20 C.F.R. § 416.927(c)(S). However, where a treating physician issues an opinion "not consistent with other substantial evidence in the record, such as the opinions of other medical experts," no such deference is due. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal citation omitted).

When presented with a treating physician's opinion, the ALJ must determine, based on the above considerations, whether the opinion is entitled to controlling weight. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). If the ALJ decides the opinion is not entitled to controlling weight, he or she then "must determine how much weight, if any, to give it." *Id.* This second determination must be based on the explicit consideration of the following factors:

15

> (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

*Id.* at 95–96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). The ALJ also must "give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [a claimant's] treating source's medical opinion." *Halloran*, 362 F.3d at 32; 20 C.F.R. § 416.927(d)(2).

Failing "'explicitly' to apply the *Burgess* factors when assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96. If an ALJ additionally fails to provide "good reasons" for the weight assignment, the error is not harmless and the case must be remanded. *Id.* "If, however, 'a searching review of the record' assures [the court] 'that the substance of the treating physician rule was not traversed,'" the ALJ's decision may be affirmed. *Id.* (quoting *Halloran*, 362 F.3d at 32); *see also Thomas v. Comm'r of Social Security Administration*, No. 19 Civ. 1177, 2020 WL 4757059, at *7 (S.D.N.Y. Aug. 18, 2020) (Report & Recommendation).

The ALJ did not afford the opinions of treating doctors Dr. Herivaux and Dr. Sanchez controlling weight. The decision does not reference the rule that the opinions of these medical professionals ordinarily would be entitled to this weight given that they appear to have treated Hill. However, as discussed above, the ALJ did explain why he found these opinions inconsistent with other medical evidence in the record, and with the opinions of the medical experts who testified at the 2018 hearing. In assigning all three of these opinions "little weight," the ALJ did not explicitly consider the *Burgess* factors. In particular, he did not address the length, nature, or extent of the treatment provided to Hill by these professionals. He also did not address the qualifications and relative specialties of either Dr. Herivaux or Dr. Sanchez. In failing to

16

consider these factors explicitly, the ALJ committed procedural error. Accordingly, the court has to conduct "a searching review of the record" to determine whether the ALJ "otherwise provides 'good reasons' for assigning little weight" to the treating professionals' opinions. *See Estrella*, 925 F.3d at 96.

In this case, the ALJ's error was not harmless. The ALJ found Dr. Herivaux's and Dr. Sanchez's opinions to be inconsistent with treatment records, primarily because records from 2016, 2017, and 2018 noted that Hill's symptoms were controlled adequately by medication, and also indicated that Hill reported successfully engaging in routine daily tasks. As a preliminary matter, "a treating physician's opinion may not be rejected 'solely on the basis that the opinions allegedly conflicted with the physician's own clinical findings.'" *Cirelli v. Comm'r of Social Security*, No. 19-cv-2709, 2020 WL 3405707 (S.D.N.Y. May 7, 2020), *adopted in full*, 2020 WL 3402433, (citing *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). In this case, the ALJ did not rely solely on Dr. Herivaux's and Dr. Sanchez's notes, but also on treatment notes from all Hill's therapy sessions provided in the record. However, as explained below, the ALJ overemphasized the extent to which these notes were inconsistent with the treating doctors' opinions.

The ALJ found these notes contrary to the doctors' opinions that Hill (i) has moderate to marked limitations in her abilities to maintain social functioning; and perform activities of daily living; (ii) frequently struggles to concentrate and complete tasks; and (iii) continually experiences episodes of deterioration or decompensation in work or work-like settings. To some extent, the ALJ is right in that these records indicate that Hill reported being able to engage in some social interactions and tasks of daily living. These records also do not document instances in which Hill experienced episodes of deterioration, and many of the more recent records

17

describe her depression symptoms as decreasing, and do not describe her as overly agitated or unable to concentrate.

That being said, some records do describe symptoms consistent with the doctors' opinions. For instance, in a November 2017 evaluation, Dr. Sanchez described Hill as having a "below average attention span" and ability to concentrate; low intellectual functioning; a mildly impaired memory and insight; and fair to mildly impaired judgment and impulse control. (R 849). Additionally, even these more recent records note that the treatment plan "goal" for the sessions was to "decrease depressive episodes," which indicates that these episodes are still a problem for Hill. (*Id.* 874, 856). There are also several places in the record that indicate that Hill failed to attend sessions without calling to cancel or reschedule, suggesting some struggle with daily activities. (*Id.* 687, 781, 779). There are also repeated places where the notes document Hill's difficult relationship with her roommates, indicating some level of interpersonal difficulty.

As the Second Circuit has remarked, with impairments like depression, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella*, 925 F.3d at 97. Accordingly, a longitudinal perspective of a claimant's mental illness is vital for a full picture. *See generally, Ferraro v. Saul*, 806 Fed. Appx. 13, 16 (2d Cir. 2020).

The ALJ additionally failed to consider the doctors' opinions in the context of the other mental health professionals' opinions. For instance, Dr. Engelberg-Damari's one time assessment largely was corroborating, as from the description provided in the ALJ's decision, was Dr. Bruni's. Dr. Jonas's opinion was the only one that was supportive of the ALJ's decision and interpretation of the record, however, the ALJ did not state that he discounted the treating doctors' opinions, because of his reliance on Dr. Jonas's testimony. His reasoning instead was rooted in his own assessment of the record. While "[g]enuine conflicts in the medical evidence

are for the Commissioner to resolve," *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), including conflicts created by competing expert opinions, here I do not find that the ALJ provided "good reasons" for failing to give the treating physicians' opinions controlling weight.

"An error in application of the treating physician rule is harmless if 'application of the correct legal standard could lead to only one conclusion.'" *Price v. Comm'r of Social Security*, No. 14-CV-9164, 2016 WL 1271501, at *4 (S.D.N.Y. Mar. 31, 2016) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)). I cannot conclude here that a correct application of the treating physician rule would not elevate the weight afforded to Hill's treating psychiatrists.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying Hill's application for benefits is vacated and the case is remanded for further proceedings. The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**
Dated: New York, New York
September 28, 2020

_____
Hon. Andrew L. Carter, Jr.
United States District Judge